***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant-employer was duly self-insured.
4. Plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant-employer. Plaintiff was exposed to asbestos for 30 days within a seven month period as required by N.C. Gen. Stat. § 97-57.
5. Plaintiff does suffer from an occupational disease, asbestosis. This diagnosis has been confirmed by Dennis Darcey, M.D., on 10 December 1997. A member of the North Carolina Occupational Disease Panel has confirmed this diagnosis. Plaintiff's medical records have been stipulated into evidence.
6. By separate stipulation signed by counsel for both parties on 13 August 2002, it is stipulated that plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00.
7. Plaintiff contends he is entitled to an award of 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12. Defendant agrees that should the claim be found compensable, defendant shall pay an amount of 5% of all compensation, exclusive of medical compensation.
8. Should this case be determined to be compensable, language may be included to remove plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-62-5(b).
9. Should N.C. Gen. Stat. § 97-60 through N.C. Gen. Stat. §97-61.7 be determined to be unconstitutional, additional testimony could be offered by the parties on the issues of wage loss earning capacity and/or disability.
 ***********
Based upon all the competent evidence adduced at the hearing and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. This matter came on for hearing before the Full Commission after plaintiff's first examination and medical reports establishing that he has asbestosis. Plaintiff is currently employed by defendant-employer.
2. Plaintiff has contracted asbestosis and asbestosis-related pleural disease as a result of his injurious exposure to the hazards of asbestos while employed by defendant-employer, Weyerhaeuser Company.
3. Based upon the stipulated description of plaintiff's job duties while employed by defendant and other evidence submitted, the Full Commission finds as fact that plaintiff was exposed to asbestos containing materials on a regular basis for more than 30 working days or parts thereof inside of seven consecutive months from 1966 until the present.
4. Plaintiff was employed by defendant-employer at its Plymouth facility from January 24, 1966 until the present.
5. Plaintiff worked in several different job capacities for defendant-employer. Plaintiff began his employment as a sheeter helper and then was promoted to a machine operator. Approximately seven years after his promotion to machine operator, plaintiff began working in the powerhouse as a utility mechanic. Plaintiff has worked as a utility mechanic for defendant-employer for the last 25 years.
6. Plaintiff has worked in the boiler room since 1975 as a utility mechanic. When plaintiff began his work in the boiler room there were nine boilers, however, there are now only four boilers present in the boiler room. Plaintiff's primary exposure to asbestos was in the boiler room. The insulation in the piping throughout the boiler room contained asbestos. Plaintiff worked in the boiler room for over 25 years and was exposed to asbestos insulation on a daily basis throughout that time. Plaintiff would crawl all over the piping in order to be able to get to the boilers and knock off asbestos insulation with his feet and hands. Plaintiff was also exposed to asbestos when the hanging chain falls were used to climb to the top rungs of the piping and ductwork. Plaintiff also used an asbestos mud mix to seal to gaskets in the boiler room.
7. Plaintiff was not provided with respirators to protect him from exposure from asbestos. The air was dusty and his clothes at times would be completely covered with dust from the asbestos insulation.
8. Defendant has admitted plaintiff does suffer from asbestosis, an occupational disease. This diagnosis has been confirmed through medical documentation from Dennis Darcey, M.D., Fred M. Dula, M.D., Phillip H. Lucas, M.D., Allen Hayes, M.D., James Johnson, M.D., and Douglas G. Kelling, Jr., M.D.
9. Plaintiff presented to Dr. Dennis Darcey of the Division of Occupational Environmental Medicine of Duke University on 10 December 1997. Dr. Darcey took an occupational history from plaintiff which included working as a millwright, a sheeter operator and a millwright helper for defendant-employer since 1966. Plaintiff recounted that he had to remove insulation material from valves, pumps and pipes he was repairing a few times per month and that he did not take any special precautions when removing the asbestos or wear any respiratory protection. He further stated that at the time he was unaware of the hazards associated with exposure to asbestos dust. He also recalled mixing and applying asbestos mud insulation materials infrequently over the course of approximately 12 years. He wore a dust mask occasionally.
10. It was the opinion of Dr. Darcey that plaintiff suffers from asbestosis and asbestos related pleural changes. His conclusion was based on the history of exposure to asbestos with adequate latency to develop asbestosis, an ILO chest x-ray and B-read and high resolution CT scan of the chest showing pleural changes consistent with asbestos exposure and interstitial changes consistent with asbestosis. Dr. Darcey assigned plaintiff with a respiratory impairment of Class 2, based on AMA Guidelines.
11. Dr. Darcey also recommended that plaintiff undergo periodic monitoring for progression of asbestos related disease including pulmonary function and chest x-ray. He further recommended that plaintiff should avoid further exposure to asbestos dust. Finally, Dr. Darcey opined that in addition to plaintiff's increased risk of developing asbestosis, he was and remains at an increased risk of developing lung cancer and mesothelioma, as opposed to those non-exposed individuals.
12. A CT scan and chest x-ray dated 11 October 1997, was interpreted by Dr. Fred M. Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader. It was the opinion of Dr. Dula there were present interstitial changes in both lung bases including short, thickened interlobar lines extending to the pleural surfaces and parenchymal bands along with bilateral mild diffuse-type pleural thickening in certain locations on the CT scan. Dr. Dula further stated that interstitial changes were seen in the lower portion of both lungs consisting of irregular linear opacities and bilateral pleural thickening on the chest x-ray. It was his overall impression that both the CT scan and chest x-ray showed interstitial and pleural changes consistent with asbestosis.
13. It was the opinion of Dr. Phillip H. Lucas, a NIOSH B-reader who also evaluated the same chest film, that there were present bilateral pleural and interstitial fibrotic changes consistent with asbestosis in a patient who has had an adequate exposure history and latency period.
14. Dr. Allen Hayes of Raleigh Internal Medicine also reviewed the 11 October 1997 chest film and indicated thereon that there were parenchymal abnormalities consistent with pneumoconiosis present. Dr. Hayes further indicated in his report that the chest x-ray shows minimal pleural findings present.
15. Dr. James Johnson of Piedmont Radiology in Salisbury, a B-reader, reviewed the chest x-ray and concluded there were both parenchymal and pleural changes present consistent with a pneumoconiosis.
16. On 8 January 1999, plaintiff was examined by Dr. Douglas G. Kelling, Jr., a Member of the North Carolina Occupational Disease Panel. Plaintiff advised Dr. Kelling that he had smoked one and one-half to two packs of cigarettes per day for 25 years but stopped 20 years ago for health reasons. He also stated that he worked as a utility mechanic for defendant-employer and that he worked with defendant-employer from 1966 to present. Plaintiff also stated that he was exposed to asbestos for the most part without the benefit of a mask or respirator and has had a 10-12 year history of shortness of breath.
17. Dr. Kelling examined plaintiff's CT scan and chest x-ray and reported that each showed interstitial and pleural changes consistent with asbestosis. He also classified plaintiff with Class 2 impairment with 10-25 percent mild impairment of the whole person as a result of his exposure based upon the fact that plaintiff's corrected diffusing capacity was 66 % of predicted. Although plaintiff was an ex-smoker, Dr. Kelling did not find evidence of obstructive impairment due to cigarette smoking.
18. Based upon plaintiff's history of exposure to asbestos and the findings on his CT scan of the chest, Dr Kelling indicated that plaintiff has evidence of both asbestosis and asbestos related pleural disease.
19. Plaintiff suffers from asbestos related pleural disease and asbestosis as a result of the many years of exposure to the hazards of asbestos while employed by defendant-employer. Plaintiff's pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation and some treatment in the future as a result of his asbestosis and asbestos related pleural disease. Further, the medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos related cancers.
20. Based upon the evidence of record, the Full Commission is required to issue an Order of Removal for plaintiff, pursuant to N.C. Gen. Stat. § 97-61.5. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff must be ordered removed from any occupational exposure to asbestos for the remainder of his employment.
21. Plaintiff's average weekly wage was sufficient to entitle plaintiff to the maximum workers' compensation rate of $588.00 during the year 2000, in which Deputy Commissioner Jones ordered plaintiff's removal from asbestos exposing employment.
22. The provisions of N.C. Gen. Stat. §§ 97-60 et seq. are not unconstitutional.
23. Plaintiff seeks attorney's fees from defendant in this case on the grounds that defendant defended this claim without reasonable ground. This issue should be reserved for subsequent determination at the final hearing in this matter.
 ***********
Based upon the stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. § 97-53(24) and § 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." In the instant case, the parties have stipulated that plaintiff has asbestosis; that he was last injuriously exposed to asbestos during his employment with defendant and that the exposure was for 30 days within a seven month period; that plaintiff remains in defendant's employ; and that should plaintiff be awarded compensation, an Order of Removal is appropriate to protect plaintiff from further exposure. Accordingly, the Commission hereby issues an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesiaand Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiff's 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." The parties have stipulated that plaintiff's wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 2000, the year the Deputy Commissioner issued the Order of Removal. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of his diagnosis of asbestosis at the weekly benefit rate of $588.00. N.C. Gen. Stat. §97-61.5; Roberts v. Southeastern Magnesia and Asbestos Co.,61 N.C. App. 706, 301 S.E.2d 742 (1983).
6. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60et seq. has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are not unconstitutional.
7. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25, § 97-59.
8. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1et seq. and is further entitled to any additional benefits due to plaintiff which shall be determined after additional examinations and hearings.
9. By agreement of the parties, plaintiff is entitled to recover a penalty of 5% of any compensation due him exclusive of medical compensation. By further agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
10. Plaintiff's claim for attorney's fees from defendant on the ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
11. This claim must be remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered to be removed from any occupation which further exposes him to the hazards of asbestos. N.C. Gen. Stat. §97-61.5(b).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis, and asbestos related pleural disease while employed by defendant, at a weekly rate of $588.00. Said sum shall be paid in a lump sum to plaintiff without commutation subject to an award of attorney's fee.
2. Defendant shall pay an additional weekly sum of 5% of the weekly compensation awarded in Paragraph 1 above to plaintiff which shall also be paid in a lump sum. As to any future weekly compensation or other compensation due, the defendant shall increase the amount of such weekly compensation and/or lump sum compensation awarded, by 5%. As per agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. Plaintiff shall undergo additional examinations as provided by law.
5. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiff's counsel. Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to his counsel.
6. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This the ___ day of August, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER